# Staunton

## George Walter Whichard v. Walter J. Nee.

September 10, 1952.

Record No. 3943.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*White, Ryan & Holland,* for the plaintiff in error.

*Page, Page & Page,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Walter J. Nee, fifty-three years of age, was struck and seriously injured by an automobile owned and driven by George Walter Whichard, defendant below. He brought this action against Whichard alleging that the accident was due to his

negligence, and obtained a verdict and judgment against him, which Whichard seeks now to have reversed and a final judgment entered in his favor.

Defendant contends that the evidence conclusively discloses negligence on the part of the plaintiff which proximately and efficiently contributed to his injuries, and that the trial court erred in submitting to the jury the question of the defendant's last clear chance to avoid the accident.

The accident occurred about one-thirty a.m., April 16, 1950, on Granby street, in the city of Norfolk, Virginia. Granby street, at the point of the accident, is a dual lane highway with two avenues of traffic, each twenty-one feet wide, the east lane being for northbound traffic, and the western lane for southbound. Between the two lanes is a grass covered parkway forty feet wide, with no obstructions thereon except some poles for street light purposes. At the time of the accident, the weather was clear and the roadway dry. There were but two eye-witnesses to the accident.

Nee testified that on the night in question he got on a bus in downtown Norfolk to go to his home in the suburban section of the city, located west of Granby street. He got off the bus on the east side of Granby at its intersection with Hyde avenue, a number of blocks, or six-tenths of a mile, south of Maple avenue, thinking it was Maple, where he intended to alight. He then proceeded to cross Granby, walking "practically" straight in a westerly direction. He traveled over the northbound or eastern traffic lane safely, and walked across the grass covered parkway, intending to cross the southbound or western lane and then walked along its edge northerly towards his home. When he reached the eastern edge of the southbound lane, and just before he "stepped on the concrete" pavement of that roadway, he looked to his right and saw a car which he "imagined" to be "about two blocks away." He started across without looking again or giving any thought to the car until he heard the "squeaking of brakes, or something." Then said he: "When I looked up, I guess I tried to turn around because I sprained this right ankle. That was when he hit me," and "He must have been right on top of me. It was all over." He first stated he "could not say how far away the car was" at that time; but later fixed the distance at ten or twelve feet. At other times he said,

with respect to the place in the street where he was struck, that he "had gottten half-way, or right in the middle, or something;" that he was "almost across the street;" and that he was positive he "had passed completely the center of the street." The defendant's car was the only vehicle he saw on the highway. At the conclusion of plaintiff's evidence, the court overruled a motion to strike and the trial proceeded.

Whichard testified that he was on his way to pick up his wife from her work; that when he reached the intersection of Bay avenue and Granby street, he stopped in obedience to a traffic sign and made a right turn into the southbound lane of Granby; that the point from which he made the turn to where the accident occurred was "not quite two blocks;" that as he approached the scene of the accident he was driving at a speed not exceeding thirty-five miles an hour, the speed limit in that area; that his car was new, with brakes good and lights all right; that there was a passenger bus in front of him and he was driving with his right wheels approximately two feet inside the center line on the right-hand side; that he first saw plaintiff when he stepped from the parkway to the concrete pavement of the southbound lane, at a point about sixty to seventy feet north of the intersection of Hyde avenue and Granby street; that plaintiff had on dark clothing and was "stumbling" diagonally across the street; that as he saw Nee he cut his car to its right side, "a matter of three or four feet," and "slammed on his brakes;" that Nee, who was about in the center of the street, was struck by the left front of the car and carried on its hood twenty to twenty-five feet; and that if he had turned his car to the left he would have hit Nee with the right headlight. He estimated that he was within fifteen to twenty feet of Nee when he first saw him, and explained that he did not see the plaintiff sooner because he was in the shadow of the street light.

Measurement showed skid marks extending fifty-five feet from the rear of defendant's car after it had stopped. A chart introduced in evidence showed that the car traveling at a speed of thirty-five miles per hour, could have been stopped within a total distance of one hundred and one feet.

Plaintiff admitted having had several drinks during the day, in addition to a couple of beers in the evening; but denied being intoxicated at the time of the accident.

The motion to strike plaintiff's evidence was renewed and overruled. The trial court held that the plaintiff was guilty of contributory negligence as a matter of law, and so instructed the jury. It, however, submitted the case to the jury on an instruction under the doctrine of the last clear chance.

According to plaintiff's evidence, he stepped from the edge of the parkway, a place of safety, on to the southbound roadway though he saw the approaching automobile. He continued across the roadway in front of it without paying it any further thought. At no time during his passage was he in a helpless condition; he was heedless and inattentive. The oncoming car was in plain view at all times, and he had an equal, if not a better, opportunity to see it than the defendant had to see him. A single glance to his right would have warned him of its closer approach and he could have as readily stopped as he could have looked. The fact that he had traveled only to a point about halfway, or slightly more, across the twenty-one foot street, before he was struck, leads to the conclusion that the car was dangerously near and much closer than two blocks when he first saw it. His "imagination" deceived him, and he misjudged its proximity.

If Nee was in a situation of peril, he placed himself in that situation. He continued in it when he had full opportunity to realize the danger and avoid injury. His negligence, therefore, never became remote. It was always immediate, and, therefore, was a proximate and efficient cause of his injury. His inattention and heedless act created a condition under which the collision arose, and he was a co-author of his own misfortune. He carelessly, inattentively and in disregard of the rule of self-preservation continuously walked into a path of danger in front of the oncoming car.

It is plain, we think, that the trial judge was warranted in his conclusion that the plaintiff was guilty of negligence as a matter of law. The decisive question is whether the evidence discloses that the negligence on his part proximately and efficiently contributed to his injuries. If the answer is in the affirmative, as we think it should be, the court erred in submitting to the jury any instruction dealing with the doctrine of the last clear chance.

Nee's testimony and that of the defendant show two different

situations, especially with respect to the location of the accident, the distances involved, and certain other attendant circumstances. As the basis for an instruction on the last clear chance, plaintiff urged the acceptance of testimony of defendant, conflicting in some particulars, and in others directly in conflict with that of plaintiff. This he cannot do.

■ Plaintiff is bound by his own testimony. He is bound by his account of what he saw and did. He can make no stronger case than that shown by it. He cannot ask a court or jury to believe that he had not told the truth, and yet be entitled to recover. *South Hill Motor Co.* v. *Gordon,* 172 Va. 193, 204, 200 S. E. 637.

■ ''Not even at a street crossing, or intersection, where the pedestrian has a right of way, does he have the right to carelessly enter or cross the intersection regardless of approaching traffic. *Meade* v. *Saunders,* 151 Va. 636, 144 S. E. 711.'' *South Hill Motor Co.* v. *Gordon, supra,* at page 205.

■ When a pedestrian, in a city or town, steps on a one-way street where traffic comes only from his right, he is under the legal duty of looking to his right for approaching vehicles, and although he may have by statute the right of way, he will be guilty of contributory negligence if he attempts to assert it in the face of approaching traffic dangerously near him. Cf. *Thornton* v. *Downes,* 177 Va. 451, 14 S. E. (2d) 345.

■ The doctrine of the last clear chance is not to be extended to become a rule of comparative negligence, or allowed to supersede the law of contributory or concurring negligence. *Hutcheson* v. *Misenheimer,* 169 Va. 511, 194 S. E. 665; *Harris Motor Lines* v. *Green,* 184 Va. 984, 37 S. E. (2d) 4, 171 A. L. R. 359; *Stark* v. *Hubbard,* 187 Va. 820, 48 S. E. (2d) 216; *Anderson* v. *Payne,* 189 Va. 712, 54 S. E. (2d) 82; *Lanier* v. *Johnson,* 190 Va. 1, 55 S. E. (2d) 442; *Keatts* v. *Shelton,* 191 Va. 758, 63 S. E. (2d) 10; *Burton* v. *Oldfield, ante,* p. 43, 72 S. E. (2d) 357.

■ The doctrine cannot be applied unless there is evidence upon which it can be based; mere probability is not sufficient. *Stark* v. *Hubbard, supra.*

■■ If opportunity to avoid the accident was as available to the plaintiff as to the defendant, then plaintiff's negligence was not a remote cause of the collision; but continued as a proxi-

mate cause. *Harris Motor Lines* v. *Green, supra; Anderson* v. *Payne, supra; Lanier* v. *Johnson, supra.* Where it conclusively appears that plaintiff's negligence did not merely create a condition out of which his injuries arose, but was an immediate, efficient, contributing cause thereof, he is not entitled to recover. *Hooker* v. *Hancock,* 188 Va. 345, 49 S. E. (2d) 711.

■ Applying the principles we have stated to the circumstances of this case, it is unnecessary to express an opinion as to whether or not the defendant was guilty of any negligence. His negligence, if any, was at most only concurrent with that of the plaintiff. Plaintiff was, therefore, not entitled to an instruction upon the theory that the defendant had a last clear chance to avoid the collision.

■ We are not unmindful that where a litigant is fortified by a jury's verdict and the judgment of the trial court, he occupies a highly favored position; but when a judgment is plainly wrong or without evidence to support it, it becomes our duty to set it aside. Virginia Code, 1950, §§ 8-491 and 8-493.

The defendant abandoned at the bar of this court his assignment of error to the action of the trial court in striking from his grounds of defense a certain *ex parte* written statement of the plaintiff, relating to the circumstances attending the act of negligence complained of, for the purpose of contradicting him as a witness in this case. Virginia Code, 1950, § 8-293. The statement was not offered in evidence.

■ Under the facts presented by the record, the trial court should have sustained the motion to strike the evidence of the plaintiff, or have set aside the verdict of the jury and entered judgment for the defendant. Since it appears that all of the facts were fully developed upon the trial, the judgment of the trial court will be reversed and final judgment entered here for the defendant. Virginia Code, 1950, § 8-493.

*Reversed and final judgment.*

BUCHANAN, J., dissenting.

I agree with the holding that the principle of last clear chance is not applicable under the evidence in this case; but I dissent from the conclusion that the plaintiff was guilty of contributory negligence as a matter of law. Whether he was or

not is, in my opinion, a question of fact which should be decided by a jury and hence final judgment should not be entered here.

The defendant claimed that he did not see the plaintiff until he was within 15 or 20 feet of him. As his reason for not seeing him sooner he said Nee was in the shadow of the street light.

The defendant testified he was driving at "approximately" 35 miles an hour in a 35 mile zone, and was preparing to pass a bus ahead of him. There was no other traffic then on the street. There were skid marks on the dry pavement extending 55 feet back of his car. A police officer had no difficulty in measuring the skid marks in the existing light. After the accident Nee was lying in the south-bound lane, one step from the west side of the street. The defendant testified he hit him with the left front of his car.

Rather clearly it would appear that there was at least a jury question whether the defendant was driving and looking with reasonable care when he struck the plaintiff under the circumstances shown by the evidence.

The plaintiff testified that he was at the street intersection when he was struck. There was other evidence to support his claim. The defendant himself testified that it was 60 to 70 feet from House No. 8815 to the intersection. He claimed that after striking the plaintiff his car stopped directly in front of 8815. However, a police officer testified that the skid marks started in front of 8815 and extended 55 feet to the back of the car; and another officer testified that Nee was lying "in line with this sidewalk here," referring apparently, though not clearly, to a sidewalk on Hyde avenue.

The defendant states in his brief that "Nee's testimony shows the accident occurred at an intersection, whereas defendant's testimony shows the accident occurred at a white fence shown to be 100 feet from the intersection."

That being the case, it was for the jury to say where the accident occurred, and if it occurred in the intersection, then to say whether the plaintiff was guilty of negligence which proximately contributed to the accident, in view of the provisions of § 46-244 of the Code, giving the right of way to pedestrians under stated conditions, and requiring that drivers of vehicles entering intersections "shall change their course, slow down or come to a complete stop if necessary to permit

pedestrians to safely and expeditiously cross such intersection.''

The plaintiff testified that he saw the car approaching but ''so far away that I did not even think nothing about it,'' and ''I did not think I would have to worry about it.''

In *Reese* v. *Snelson,* 192 Va. 479, 65 S. E. (2d) 547, the plaintiff saw some vehicles approaching about half a block away and thought he would have ample time to cross the southern half of Broad street and reach the sidewalk before they arrived. He did not look again until he was two-thirds of the way across and then defendant's car ''was almost upon him.'' He was struck and injured. We held that it was for the jury to say whether he was guilty of negligence.

In *Bethea* v. *Virginia Elec., etc., Co.,* 183 Va. 873, 880, 33 S. E. (2d) 651, 653, when the plaintiff started across the street the bus was approximately 70 feet away. We said: ''If he was crossing at a proper place, the plaintiff had the legal right to assume that the driver would give him the right of way, a right which the drivers of motor vehicles too often overlook. Whether the plaintiff was exercising a reasonable lookout for his safety as he crossed the street was a question for the jury.''

See also *Lucas* v. *Craft,* 161 Va. 228, 170 S. E. 836; *Overton* v. *Slaughter,* 190 Va. 172, 56 S. E. (2d) 358; *Danner* v. *Cunningham, post,* p. 142, 72 S. E. (2d) 354.

I would remand the case for a new trial on the questions of the defendant's negligence and the plaintiff's contributory negligence.

Miller, J., joins in this dissent.